IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TYRONE GILL, N10443,                    )
                                        )
              Plaintiff,                )
                                        )
vs.                                     )
                                        )
WARDEN GALLOWAY,                        )
WARDEN ANTHONY,                         )
LT. BANK,                               )          Case No. 26-cv-417-DWD
LT. BROWN,                              )
C/O HILLARD,                            )
C/O MOSS,                               )
C/O PERQUET,                            )
C/O JONE,                               )
SGT. HENNSON,                           )
                                        )
              Defendants.               )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Tyrone Gill, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Dixon Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center (Shawnee). Specifically, Plaintiff claims that Defendants Hillard, Moss, Perquet, Jone, and Hennson verbally harassed him and destroyed property, and Defendants Galloway, Anthony, Bank, and Brown failed to act on his requests for assistance. The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that in the first two weeks of July of 2025, he wrote three letters to Defendant Warden Galloway asking him to intervene in incidents of harassment and broken personal property carried out by Defendants Hillard and Moss, but Galloway never responded.  (Doc. 1 at 9).  Likewise, he alleges he wrote three letters to Defendant Warden Anthony with no response.  (*Id.*).  On July 20, 2025, he personally spoke to Defendant Anthony, who indicated he would look into the alleged harassment and property issues.  (*Id.* at 10).  On July 25, 2025, he saw Anthony and again complained of harassment, issues with property, retaliation, and false tickets.  Anthony promised to investigate, but Plaintiff alleges that nothing changed.  (*Id.*).  On August 6, 2025, Anthony visited Plaintiff during a hunger strike, at which time Plaintiff again voiced his concerns and added that he made four PREA calls about the issues.  Anthony indicated he would investigate if Plaintiff agreed to end his hunger strike, but Plaintiff did not agree because he did not believe Anthony would help.  (*Id.*).  Plaintiff remained on hunger strike for 12 days until a mental health supervisor promised a facility transfer if he ended the strike.  (*Id.*).

Plaintiff also wrote Defendant Bank on July 3, 2025, seeking an investigation, but got no response. (Doc. 1 at 11). On July 29, 2025, Plaintiff complained of harassment by Defendants Moss, Perquet, Jone, and Hennson to Defendant Bank in person and Bank promised to investigate but Plaintiff felt the promise was not genuine. (*Id.*). On July 3, 2025, Plaintiff also wrote Defendant Brown and told Brown that Hillard and Moss were writing retaliatory tickets and destroying inmate property over issues with cell doors, but the tickets were meant to cover up staff wrongdoing. (*Id.*). On July 29, 2025, Plaintiff directly complained to Brown about issues with Perquet, Jone, Moss, and Hennson, but Brown told him to write a grievance. (Doc. 1 at 12).

Plaintiff alleges that on July 29, 2025, Perquet questioned him about the legitimacy of his job as a porter (which he legitimately possessed) and then told him he would not have the job soon. (Doc. 1 at 12). Plaintiff alleges that when he asked Perquet why his job would be disrupted, Perquet said it was because Plaintiff had been writing letters to the warden and others. (*Id.* at 13). The same day when Perquet announced Plaintiff's medical writ over the speaker, Perquet said Plaintiff's "faggot ass" had a medical appointment. (*Id.*). Plaintiff alleges despite four or more reports to PREA, harassment from Hillard, Jone, Hennson, Moss, and Perquet continued. Plaintiff alleges these staff members called him a faggot, told him to "suck a dick" and did other things to retaliate. (*Id.* at 13-14). He further alleges that when he returned from his medical appointment, Defendant Hennson had drawn up a paper terminating Plaintiff's job. (*Id.* at 15). Plaintiff alleges that Hennson said "we don't allow faggot to work for us." (*Id.*).

Plaintiff further alleges that on August 1, 2025, Defendants Moss and Hillard continued the verbal name calling, they destroyed his personal property, and they pinned him to the back of his cell and threatened that this was just the beginning. (Doc. 1 at 15-16). Plaintiff alleges that as a result of this incident he went on a hunger strike and crisis watch because he feared for his life and safety. (Doc. 1 at 16). He alleges he saw a non-party mental health supervisor and reported the harassment by Perquet, Hillard, Moss, Jone, and Hennson. He alleges the supervisor inquired with Hillard about the events, Hillard denied writing a disciplinary ticket, and Hillard subsequently did write a ticket that was expunged based on the supervisor's statement to the adjustment committee that the ticket was retaliation. (Doc. 1 at 17).

Plaintiff remained on hunger strike for 12 days. (Doc. 1 at 17). On October 1, 2025, Plaintiff was transferred to Dixon. He alleges that despite Shawnee knowing of his transfer, they issued responses to some of his grievances but did not mail them to him at his new institution until after the appeal deadline had lapsed. (*Id.*). Plaintiff alleges deliberate indifference, failure to protect, sexual harassment, retaliation, and destruction of property. (Doc. 1 at 18). He seeks monetary compensation. (*Id.* at 19). In support of the complaint, Plaintiff submitted copies of several of his grievances. (Doc. 1 at 22-46). He also supplied copies of letters he alleged he wrote to Defendants Galloway, Anthony, Bank, and Brown.

Based on the allegations in the Complaint the Court designates the following Claims:

**Claim 1:** **First Amendment retaliation or Eighth Amendment cruel and unusual punishment or harassment claim against Defendants Hillard, Moss, Perquet, Jone, and Hennson;**

**Claim 2:** **Eighth Amendment failure to intervene or protect claim against Defendants Galloway, Anthony, Bank, and Brown.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

Generally, verbal harassment must be coupled by other threatening circumstances to rise to the level of a freestanding claim, and it is also necessary for the alleged recipient of the harassment to identify a concrete and reasonable fear associated with the harassment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The

test for what constitutes cruel and unusual punishment is an objective one.  It is not the actual fear of the victim, but what a "reasonable victim" would fear."  *Id.*

Here, Plaintiff alleges that over the course of at least a few months Defendants Hillard, Moss, Perquet, Jone, and Hennson made verbal remarks to him about his sexuality either in a demeaning way or as a pretense for some other adverse action.  For example, he alleges Perquet and Hennson terminated his prison job over his sexuality.  He also alleges instances of pure verbal harassment, and he alleges one instance where Moss and Hillard backed him into his cell and spoke aggressively to him.  While interactions between inmates and prison staff certainly are not always cordial, there is a basic expectation that prison staff not intentionally harass or taunt inmates, particularly where such conduct preys upon an attribute that might subject an inmate to further mistreatment from his fellow inmates.  Plaintiff alleges that the Defendants conduct went beyond plain spoken word and eventually included the loss of his prison job, and a physical confrontation that ended short of physical blows.  Plaintiff alleges that as a result of this ongoing conduct and his failed attempts to seek help, he eventually ended up on a hunger strike and feared for his life and safety.  At this early juncture, the Court will read the complaint broadly in Plaintiff's favor and will accept his assertion that Hillard, Moss, Perquet, Jone, and Hennson have engaged in improper harassment.

Additionally, Plaintiff alleges that Hillard, Moss, Perquet, Jone, and Hennson engaged in the harassment and conduct he describes as a form of retaliation for complaints that Plaintiff and his peers had been making to higher-ups about staff conduct.  A successful claim for First Amendment retaliation requires that a plaintiff

show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).  Legitimate grievances about staff misconduct, or genuine reports by inmates of staff misconduct, may be protected speech, and action taken to punish that speech may violate the First Amendment.  As such, Claim 1 may proceed on the dual theories of First and Eighth Amendment misconduct against Defendants Hillard, Moss, Perquet, Jone, and Hennson.

However, it is worth noting that if it becomes apparent at some point that this case is really an attempt to litigate the issue of staff allegedly destroying inmates' personal property for inmates breaking the rules and leaving their cell doors open, any such claim is not viable.  An inmate breaking a prison rule or engaging in back talk cannot claim a First Amendment retaliation violation.  *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) (backtalk and actions that violate prison rules are not protected speech). Additionally, inmates cannot use a § 1983 claim to pursue damages for lost personal property because there is an adequate remedy for that issue with the Illinois Court of Claims. *See Cunningham v. Washington*, 16 Fed. App'x 502, 506 (7th Cir. 2001) (finding that a district court properly dismissed a claim about an inmate's lost personal property because the Illinois Court of Claims provides an adequate post-deprivation remedy for lost inmate property).

In Claim 2 Plaintiff faults Defendants Galloway, Anthony, Brown, and Bank, for turning a blind eye to his correspondence about the other defendants' conduct. In support of the complaint, Plaintiff submitted copies of his alleged letters to these individuals. (Doc. 1-1 at 1-8). The copies show that Plaintiff wrote Galloway, Anthony, Brown, and Bank, solely about the alleged destruction of personal property by defendants Hillard and Moss. Specifically, he claims that when inmates violated a prison rule and left their cell doors open, Hillard and Moss would enter and destroy property.

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Negligence is not enough to support a deliberate indifference claim. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

Plaintiff's letters to Galloway, Anthony, Brown and Bank, solely discuss damage to personal property that allegedly occurred when inmates broke a prison rule and left their cell doors open. The information relayed by Plaintiff in his letters to Galloway, Anthony, Brown, and Bank, does not come anywhere near alerting these officials to a

serious risk of harm that Plaintiff faced.  Thus, Plaintiff has not plausibly alleged that these four defendants failed to protect him or intervene in a situation that posed a serious risk of harm based on the letters.

In addition to the letters, Plaintiff alleges in the complaint that he spoke directly to Defendant Anthony about sexual harassment on July 25, 2025, and again while on hunger strike in August of 2025, but Anthony did not act.  He also alleges he spoke to Bank and Brown about the alleged verbal harassment from Perquet, Moss, Jone, and Hennson on July 29, 2025.  He claims the two refused to act, and that he was subject to further harassment the same day by Jone, Moss, and Hennson, after making his report to Bank and Brown.  Additionally, he alleges that on August 1, 2025, Hillard and Moss backed him into his cell and threatened him.  Though Plaintiff does allege he alerted Bank, Brown, and Anthony to the harassment beyond what was in his written letters, the Court is still not persuaded at this early juncture that Plaintiff's allegations plausibly suggest he alerted Bank, Brown, or Anthony to a serious risk of harm.  Though verbal harassment is unpleasant, he does not say anything tending to suggest that these three defendants should have suspected a serious risk of harm.  Accordingly, Claim 2 will be dismissed as insufficiently pled.

MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel wherein he indicates he has attempted to recruit his own lawyer, to no avail.  (Doc. 3 at 1).  When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following

inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff gave the addresses of many attorneys that he attempted to contact, but the Court requires either copies of their responses or proof that Plaintiff paid postage to contact at least 3-5 attorneys.

Additionally, Plaintiff does not explain why he needs counsel to assist him with this case. Right now, the case is at the earliest stage and the next steps will be closely guided by orders of the Court. Based on Plaintiff's drafting of the complaint and his inclusion of relevant evidence, the Court finds Plaintiff competent to proceed at this early juncture without further assistance. Plaintiff may renew his motion later in the case, but he must be more specific about the challenges he faces with this case.

### Disposition

**IT IS HEREBY ORDERED THAT**: **Claim 1** of the Complaint (Doc. 1) survives against Defendants Perquet, Jone, Hennson, Hillard, and Moss. By contrast, Claim 2 does not survive against any of the named defendants, and the Clerk of Court shall

**TERMINATE** Defendants Galloway, Anthony, Bank, and Brown for Plaintiff's failure to plead a sufficient claim against them.  Plaintiff's Motion for Recruitment of Counsel (Doc. 8) is **DENIED**.

The Clerk of Court is **DIRECTED** to prepare for Defendants Perquet, Jone, Hennson, Hillard, and Moss (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: June 18, 2026

DAVID W. DUGAN
United States District Judge